2025 IL App (4th) 241112

NO. 4-24-1112

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 12, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE VILLAGE OF CHATHAM, an Illinois Municipal Corporation, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Sangamon County |
| v. | ) | No. 22GC1 |
| SPRINGFIELD AIRPORT AUTHORITY, an Illinois Airport Authority, | ) ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Adam Giganti, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Steigmann and Lannerd concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Springfield Airport Authority (Authority), an Illinois airport authority, appeals two orders of the circuit court of Sangamon County entering summary judgment in favor of plaintiff the Village of Chatham (Chatham), an Illinois municipal corporation. The court ordered that the Board of Commissioners of the Springfield Airport Authority (Board) be increased from seven to eight commissioners, with the additional commissioner to be appointed by Chatham. On appeal, the Authority argues that the court's ruling violates the language of section 3.1(3) of the Airport Authorities Act (Act) (70 ILCS 5/3.1(3) (West 2022)), which it contends requires Chatham to be located "wholly within" the Authority to be entitled to appoint a commissioner.

¶ 2        We agree, so we reverse the entry of summary judgment in favor of Chatham and remand to the circuit court to enter judgment in favor of the Authority as a matter of law.

¶ 3                                    I. BACKGROUND

¶ 4        Chatham filed a verified petition to determine the population of Chatham and the Authority and to increase the number of commissioners on the Board. According to subsection 3.1(3):

> "Should a municipality which is wholly within an authority attain, or should such a municipality be established, having a population of 5,000 or more after the entry of said order by the circuit court, the presiding officer of such municipality may petition the circuit court for an order finding and determining the population of such municipality and, if it is found and determined upon the hearing of said petition that the population of such municipality is 5,000 or more, the board of commissioners of such authority as previously established shall be increased by one commissioner \*\*\*." *Id.*

¶ 5        Chatham's petition asserted that the village's population included 14,377 residents, 5,509 of whom reside within the boundaries of the Authority, and that these numbers qualified it to obtain the appointment of two additional commissioners. The Authority filed its answer, admitting the relevant factual allegations but denying that Chatham was entitled to the relief it sought. Chatham later amended its petition to request appointment of only one additional commissioner.

¶ 6                                   A. Summary Judgment

¶ 7        Chatham moved for summary judgment, arguing that it had met the statutory requirements for appointment of an additional commissioner, including a population of 5,000

residents within the Authority's district. On January 26, 2024, the circuit court granted Chatham's motion for summary judgment, finding that Chatham's population was 14,377 and that at least 5,000 of those persons resided within the Authority's boundaries. The court's order noted that the Authority "admit[s] there are at least 5000 residents of the Village of Chatham and within the Springfield Airport Authority district." The court also rejected the Authority's argument that the whole of Chatham must "be located within the Springfield Airport Authority district." The order was silent concerning the appointment of an additional commissioner as requested in Chatham's petition.

¶ 8                                    B. Motion for Clarification and Order

¶ 9            On July 18, 2024, Chatham filed a motion for clarification of the circuit court's summary judgment order, asking it to address its request to increase the size of the Board from seven to eight commissioners and to place certain conditions on the additional commissioner's term.

¶ 10            On August 12, 2024, the circuit court granted Chatham's motion for clarification and ordered that the Board be increased from seven to eight commissioners, with one additional commissioner to be appointed by Chatham in accordance with section 3.1(3). *Id.* The court made additional findings concerning the new commissioner's term that are not relevant to the issues in this appeal.

¶ 11            The Authority filed its notice of appeal on August 26, 2024.

¶ 12                                    II. ANALYSIS

¶ 13            On appeal, the Authority argues that the language of section 3.1(3) requires that a municipality seeking the appointment of an additional commissioner must not only have at least 5,000 residents within the Authority's territory but that the municipality itself must be located

"wholly within" the territory of the Authority. Chatham disputes this point, contending that the statute permits the appointment so long as 5,000 of its residents live within the Authority's boundaries, even if other Chatham residents live outside of that territory. At issue, therefore, is how to define a qualifying municipality under section 3.1(3).

¶ 14                                    A. Jurisdiction

¶ 15        Although not raised by the parties, a reviewing court has an independent duty to consider *sua sponte* issues of jurisdiction. *People v. Ratliff*, 2024 IL 129356, ¶ 15. It is well settled that the timely filing of a notice of appeal is mandatory and jurisdictional. *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998). Here, the circuit court granted summary judgment on January 26, 2024, but the Authority did not file its notice of appeal until August 26, 2024, almost seven months later. Pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017), however, a notice of appeal "must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, *if a timely posttrial motion directed against the judgment is filed*," within 30 days of the resolution of that motion. (Emphasis added.)

¶ 16        Typically, a motion for clarification is not directed against the judgment, so it does not toll the time for filing a notice of appeal. *R&G, Inc. v. Midwest Region Foundation for Fair Contracting, Inc.*, 351 Ill. App. 3d 318, 323 (2004); *Welton v. Ambrose*, 351 Ill. App. 3d 627, 631 (2004) (holding that a motion for clarification of a circuit court's previous action does not fall within section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2002))). Here, however, the circuit court's summary judgment ruling of January 26, 2024, did not resolve all matters at issue because it did not address Chatham's request to appoint a new commissioner; consequently, it was not the final judgment in the case. Chatham's motion simply asked the court to rule on the unresolved issues raised in its petition. The order granting the motion for clarification

resolved the outstanding matters, making it the final order in the case and the notice of appeal timely. We therefore have jurisdiction over this appeal.

¶ 17                                                   B. Section 3.1(3)

¶ 18           The instant appeal involves statutory construction of section 3.1(3), which provides as follows:

> "(3) Should *a municipality which is wholly within an authority attain, or should such a municipality be established, having a population of 5,000 or more after the entry of said order by the circuit court*, the presiding officer of such municipality may petition the circuit court for an order finding and determining the population of such municipality and, if it is found and determined upon the hearing of said petition that the population of such municipality is 5,000 or more, the board of commissioners of such authority as previously established shall be increased by one commissioner ***." (Emphasis added.) 70 ILCS 5/3.1(3) (West 2022).

¶ 19           The rules governing statutory construction are well known:

> "[O]ur primary goal of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature. *Id.* The best indication of that intent is the statutory language, which, when clear and unambiguous, must be construed as written, without reading into it exceptions, conditions, or limitations that the legislature did not express." *Elam v. Municipal Officers Electoral Board for the Village of Riverdale*, 2021 IL 127080, ¶ 14.

A statute should be read as a whole and construed to give effect to every word, clause, and sentence; "we must not read a statute so as to render any part superfluous or meaningless." *People ex rel. Illinois Department of Corrections v. Hawkins*, 2011 IL 110792, ¶ 23. Moreover, words and

phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279-80 (2003). Courts must "construe statutes in a manner that will avoid absurd, unreasonable, or unjust results that the legislature could not have intended." *People ex rel. Alvarez v. Gaughan*, 2016 IL 120110, ¶ 19.

¶ 20                                C. Standard of Review

¶ 21            Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). "When ruling on a motion for summary judgment, courts consider all of the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Hutson v. Pate*, 2022 IL App (4th) 210696, ¶ 37. We review a grant of summary judgment *de novo*. *Id.* Issues of statutory construction present questions of law that are appropriate for determination at summary judgment, and they are also reviewed *de novo*. *Oswald v. Hamer*, 2018 IL 122203, ¶ 9.

¶ 22                                D. Dispute at Hand

¶ 23            There is no dispute among the parties concerning the core facts: all agree that at least 5,000 of Chatham's residents live within the Authority's territory, though others live outside it. The sole question in dispute is whether the statute requires that a municipality be located entirely within the Authority's territory to secure appointment of an additional commissioner or whether it is sufficient that some part of the municipality—a part containing 5,000 residents—is sufficient. This appears to be a question of first impression.

¶ 24            There are multiple provisions of the statute speaking to the membership of the Board. The one relied on by Chatham in this case is section 3.1(3), which addresses those

municipalities that either grow to a specific population or are newly incorporated with that population. Specifically, section 3.1(3) provides for the appointment of an additional commissioner should a "municipality which is wholly within an authority attain, or should such a municipality be established, having a population of 5,000 or more after the entry of said order by the circuit court." 70 ILCS 5/3.1(3) (West 2022). The order referenced is apparently the original order determining the number of commissioners on the airport authority's board. *Id.* § 3. It could not, of course, be the orders at issue in this case, which must be premised upon the facts that existed before the time of their entry.

¶ 25    Focusing specifically on the plain language of section 3.1(3)—the statute relied upon by the petitioner and by the circuit court below—we conclude that the statute requires that the *entirety* of the municipality must lie within the Authority's territory to empower the municipality to seek appointment of an additional commissioner under that provision.

¶ 26    We cannot accept Chatham's suggestion that the word "or" in the relevant phrase creates two different routes to relief, such that the words "wholly within an authority" apply only to existing municipalities that grow to 5,000 residents but not to new municipalities that have any 5,000 of their residents living within the airport district. This simply is not what the statute says. The words "or should such a municipality be established" refer to the preceding description of an existing municipality "wholly within an authority" that grows to 5,000 residents. In other words, "or" is a disjunctive word separating existing municipalities that grow to 5,000 residents or new ones with the same population threshold, but, in either case, the municipality must be "wholly within the authority."

¶ 27    The language of section 3.1(3) is, then, clear and unambiguous and must be given its plain and ordinary meaning. Consequently, the circuit court erred in entering summary

judgment in favor of Chatham. While Chatham contends that a portion of its territory lies within the Authority's district and has more than 5,000 residents, this is simply not a basis for relief under section 3.1(3).

¶ 28    We recognize that other provisions of the Act allow for appointment of commissioners correlating to municipalities "having a population of 5,000 or more within the Authority" without requiring that the whole of the municipality also be within the boundaries of the authority. But this merely demonstrates that if the legislature wanted to include the same language within section 3.1, it clearly knew how to say as much. Instead, the legislature seems to have chosen different qualifications for municipalities that only subsequently obtain the requisite population; we cannot assume that the legislature did not mean what it said. See *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999) ("It is well established that, by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended."); accord *People v. Burge*, 2021 IL 125642, ¶ 28.

¶ 29    A plain reading of the various subsections shows that each addresses a different point in time. For example, subsection (1) sets forth the appointment procedure at the authority's creation and allows for any municipality with at least 5,000 residents to become part of the appointment formula. It is, in essence, based on a "snapshot" of population taken at the time of the authority's creation. Subsection (3), on the other hand, defines how municipalities that have grown or been newly formed can also become part of the formula, but this group is limited to municipalities "wholly within" the Authority. The issue here is not whether the legislature's judgment in this regard was right or wrong but whether it should be respected.

¶ 30    " 'No rule of construction authorizes this court to declare that the legislature did not mean what the plain language of the statute imports, nor may we rewrite a statute to add

provisions or limitations the legislature did not include.' " *People v. Clark*, 2019 IL 122891, ¶ 47 (quoting *People v. Smith*, 2016 IL 119659, ¶ 28). We note that the General Assembly is always free to amend a statute if it intends a construction different from that given by a court. *Corwin v. Abbott Laboratories*, 353 Ill. App. 3d 848, 851 (2004).

¶ 31                                      III. CONCLUSION

¶ 32         For the reasons stated, we reverse the circuit court's judgment and, given our analysis, remand to the circuit court to enter judgment in favor of the Authority as a matter of law. Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994); *Wadelski v. Sixteenth Ward Building & Loan Ass'n*, 276 Ill. App. 74, 83 (1934).

¶ 33         Reversed and remanded.

*Village of Chatham v. Springfield Airport Authority*, 2025 IL App (4th) 241112

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 22-GC-1; the Hon. Adam Giganti, Judge, presiding. |
| **Attorneys for Appellant:** | Donald M. Craven and Joseph A. Craven, of Donald M. Craven, P.C., of Springfield, for appellant. |
| **Attorneys for Appellee:** | Lisa A. Petrilli, of Sorling Northrup, of Springfield, for appellee. |