# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

*Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907

---

| | |
|---|---|
| Caption in Supreme Court: | KENNETH PORIS, Appellee, v. LAKE HOLIDAY PROPERTY OWNERS ASSOCIATION *et al.*, Appellants. |
| | |
| Docket No. | 113907 |
| | |
| Filed | January 25, 2013 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A nonprofit homeowners association could adopt traffic rules for its grounds and create a security department which could enforce those rules against members by stopping them for violations and issuing citations for them to pay fines to the association. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of La Salle County, the Hon. Eugene P. Daugherity, Judge, presiding. |
| | |
| Judgment | Appellate court judgment reversed in part and affirmed in part.<br>Circuit court judgment affirmed. |

| Counsel on Appeal | Bruce W. Lyon and Camilla M. Pollock-Flynn, of LaBarge Campbell & Lyon, LLC, of Chicago, and Douglas A. Gift, of Herbolsheimer, Henson, Duncan, Gift, Eiten & Hintz, PC, of La Salle, for appellants. |
| --- | --- |
| | John H. Brechin, of Addison, Kenneth E. Poris, of Somonauk, and James G. Groat, of Naperville, for appellee. |
| | Donohue Brown Mathewson & Smyth LLC, of Chicago (Karen Kies DeGrand and Emily L. Hussey, of counsel), for *amicus curiae* Illinois Association of Lake Communities |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff, Kenneth Poris, a member of defendant Lake Holiday Property Owners Association (the Association), filed a 14-count third amended complaint naming as defendants the Association; George Leidolf, James Moran, Steven Condon, Dorothy Fleming, James Byrne, Michael Ivanauskas, and Cindy Kaminky, the individual members of the Association's board of directors; and Matthew Clifford, the chief of security for the Lake Holiday private security department. Defendants filed a motion for summary judgment in their favor on all counts of the complaint. Plaintiff filed a cross-motion for summary judgment on counts I, II, IV and XIII. The circuit court of La Salle County granted summary judgment in favor of defendants on all counts of the complaint. The appellate court affirmed in part, reversed in part, and remanded. 2012 IL App (3d) 110131. This court allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). This court also granted the motion of the Illinois Association of Lake Communities to file a brief *amicus curiae* in support of defendants pursuant to Illinois Supreme Court Rule 345 (Ill. S. Ct. R. 345 (eff. Sept. 20, 2010)).

¶ 2                    BACKGROUND

¶ 3    Lake Holiday is a private lake community. Lake Holiday is set on 1,500 acres, which are apportioned into 2,000 single-family lots. More than 400 of the lots are along a 328-acre private lake. The Association was incorporated on or about July 2, 1965, in unincorporated La Salle County, Illinois, as an Illinois not-for-profit corporation. See 805 ILCS 105/101.01 *et seq.* (West 2008).

¶ 4        Section 5 of the Association's amended articles of incorporation, filed on January 18, 1973, provided that the purpose or purposes for which the corporation was organized were:

> "To promote and enhance the civic and social interests of the owners of real estate in Lake Holiday Development, LaSalle County, Illinois; insofar as those interests relate to the maintenance of Lake Holiday, the dam constructed at the headwaters thereof, and appurtenant structures thereto. To acquire and hold real estate in its corporate name; to construct and maintain thereon buildings and structures of all types, roadways, beaches; and, to do all other things reasonably necessary therefor; memberships herein shall be restricted to owners of land in Lake Holiday Development ***."

¶ 5        The Association enacted restrictive covenants, bylaws, and rules and regulations.[1] The bylaws provided for a board of directors that governed the Association. Article 4, section 8, of the bylaws provided that:

> "The Board of Directors shall adopt such rules and regulations relating to the use of association property as they may deem reasonably necessary for the best interests of the association and its members. They may also in order to better effectuate said rules and regulations, adopt reasonable sanctions for non-compliance therewith. *** The Board of Directors shall also employ a sufficient number of persons to adequately maintain association property."

¶ 6        As indicated, the Association's board also adopted rules and regulations for the Association. One of the rules relevant to this case is Rule 2.01, which provided that:

> "No person shall knowingly resist or obstruct the performance by one known to the person to be a public safety officer of any authorized act within his or her official capacity. No person shall fail or refuse to comply with any lawful order or direction of any public safety officer authorized by the Lake Holiday Property Owners Association. A request to examine personal identification, such as a driver's license, in addition to a member's amenity pass shall be honored."

¶ 7        With regard to speed limits on Association property, Rule 3.10 provided that:

> "Unless otherwise posted, the speed limit on all Lake Holiday roads shall be 25 miles per hour. Speed limits shall be strictly enforced. Violations from 1 to 10 mph over the posted speed limit are CLASS C VIOLATIONS. From 11 to 15 mph over the posted speed limit are CLASS B VIOLATIONS. From 16 mph or over the posted limit are CLASS A VIOLATIONS."

Class A violations carry a $200 fine for a first offense. Class B violations carry a $100 fine for a first offense, and Class C violations carry a $50 fine for a first offense.

¶ 8        The Association rules and regulations also contain provisions concerning enforcement. Rule 8.01 provided:

> "Enforcement of the rules and regulations of the Lake Holiday Property Owners

---

[1]Quotations and references in this opinion to the Association's restrictive covenants, bylaws, and rules and regulations are to the versions in effect at the time of the events at issue.

Association as defined in this booklet is empowered to the Board of Directors by the restrictive covenants and By-Laws. The Board is empowered to impose sanctions for violations of rules and regulations and building codes. Such sanctions shall include but are not limited to one or more of the following:

1. Written warnings.

2. Fines.

3. Restitution.

4. Suspension of the use of Association amenities.

5. Criminal prosecution under the applicable state statutes.

In no way shall such sanctions infringe on the rights of individual property owners or the Association to pursue further recourse either in law or equity through civil courts of competent jurisdiction. Lake Holiday Private Security officers have been given power to enforce these regulations. The Private Security officers can issue citations for violations. Enforcement people will carry identification as evidence of the authority which has been delegated to them by the Lake Holiday Property Owners' Association Inc."

¶ 9    Rule 8.01 also provided that notice of an alleged violation of Lake Holiday rules and regulations will be served in writing as either a citation or a letter of notification. The accused is given a right to a due process hearing before the citation committee concerning the stated offense. Citation committee decisions may be appealed to the board of directors at the request of any involved party.

¶ 10    The board established the "Lake Holiday Private Security Department" and created a manual for the security department. The board hired defendant Clifford as the security department's chief of security. In that capacity, Clifford reports to the board. There are several private security officers in addition to Clifford.

¶ 11    The Lake Holiday Security Manual states that one of the functional objectives of the department is the movement of traffic. Thus, "[t]o enforce compliance with Lake Holiday traffic rules, *** the Department appropriately warns or cites traffic violators." Lake Holiday security vehicles are equipped with radar units and oscillating lights. At the time of the events giving rise to plaintiff's complaint, the oscillating lights were amber and white. However, the La Salle County sheriff's office later instructed Clifford to stop using white lights, so the security vehicles currently use only amber oscillating lights.

¶ 12    Lake Holiday security vehicles also are equipped with radar units and video and audio recording equipment. Department procedure is to inform drivers that they are being recorded, and officers are to shut off the recording equipment if the driver says that he does not want to be recorded. Security officers are required to wear a badge, a uniform, and a duty belt, which may include weapons that the officer is certified to carry on duty. The duty belt must not include any type of firearm holster. Permissible weapons do not include spring-loaded batons or any type of electronic stun gun. Defense counsel clarified at oral argument that Association security officers are neither required to, nor allowed to, carry firearms.

¶ 13    At oral argument, defense counsel also explained that the Association security officers

only issue citations for violations of Association rules and regulations. Security officers do not issue citations for violations of the Illinois Motor Vehicle Code, nor is the Illinois Secretary of State informed of the Association citation. There are no consequences for receiving a citation for violating an Association traffic rule other than receipt of a warning or fine from the Association. If a security officer stops a guest of an Association member for violating the Association speed limit, the Association member is responsible for his guest's citation. Further, if the security department stops a member of the public who is driving on Association streets, and who is neither an Association member nor a guest of an Association member, the security department has no authority to issue any citations to that person, and at most may only warn the driver that he is on private property and is exceeding the posted speed limit.

¶ 14    Plaintiff owns property in the Lake Holiday Development and is a member of the Association. Plaintiff has been an Association member since 1993 or 1994. Lake Holiday Rule 1.02 defines a member as:

> "any person or spouse who has an interest as an owner in real estate situated in the Lake Holiday development, La Salle County, Illinois; and who has paid all dues and assessments levied against them or such real estate by the Lake Holiday Property Owners Association, Inc., since said person has acquired said interest in the real estate, and who may otherwise be in good standing."

¶ 15    The incident giving rise to the complaint in the instant case occurred on October 20, 2008. Plaintiff alleged that he was driving his car on Farmer's Road, a road within the Lake Holiday Development, and owned by the Association. Using a radar unit, James Podnar, one of the Association's private security officers, measured plaintiff's speed at 34 miles per hour. Podnar activated the lights on his security vehicle, which at the time were amber and white oscillating lights, and pulled plaintiff over. Plaintiff exited his vehicle, but Podnar instructed him to get back in the vehicle and to stay there, for safety reasons. Podnar then walked to plaintiff's vehicle and asked for plaintiff's Association membership card and driver's license. Podnar took plaintiff's license back to his security vehicle.

¶ 16    Four and a half minutes later, Podnar again walked to plaintiff's vehicle. Podnar told plaintiff that he was being recorded. Podnar also told plaintiff that he was issuing him a citation for speeding. Plaintiff asked if Podnar was a police officer, and Podnar said no, that he worked for Lake Holiday Private Security. Plaintiff repeatedly told Podnar that he had no authority to detain him, and Podnar responded that he was not detaining plaintiff.

¶ 17    Plaintiff filed his initial complaint in February 2009. On February 19, 2009, plaintiff filed a motion for temporary restraining order, seeking an order prohibiting defendants from pursuing his speeding citation. At the hearing on plaintiff's motion, plaintiff testified that, on October 20, 2008, he saw amber and white oscillating lights behind him while he was driving on Farmer's Road. Plaintiff pulled over, thinking an emergency vehicle was behind him. Plaintiff testified that Podnar got out of his squad car wearing a uniform and a large belt. Podnar also had a "large, club-like flashlight." Plaintiff testified that Podnar told him, in "a very authoritative, forceful voice," to get back in his vehicle. Plaintiff said that he complied, and did not feel free to leave. Plaintiff testified that he believed he was under

arrest. Following the hearing, the trial court denied plaintiff's motion for temporary injunction.

¶ 18    On March 19, 2010, plaintiff filed his third amended complaint. Count I was a declaratory judgment action against the Association seeking: a declaration that the practices and procedures of the Association's security department are unlawful, and the rules and regulations in effect on the date of plaintiff's traffic stop were void; to enjoin defendants from stopping vehicles for alleged traffic violations when they lack the legal authority to do so; to enjoin defendants from attempting to fine plaintiff for the alleged speeding violation issued on October 20, 2008; and to award plaintiff costs and attorney fees.

¶ 19    Counts II and III of the third amended complaint alleged breach of fiduciary duty and willful and wanton conduct by the Association. Count IV alleged false imprisonment by the Association. Counts V through XII alleged breach of fiduciary duty and willful and wanton conduct by each individual board member and Clifford. Count XIII alleged nuisance by the Association, and count XIV sought an accounting by the Association.

¶ 20    As noted, the trial court granted summary judgment in favor of defendants on all counts of plaintiff's complaint. On appeal, plaintiff argued that the trial court erred in granting summary judgment in favor of defendants on his declaratory judgment cause of action. Specifically, plaintiff argued that: the Association was not authorized by law to stop vehicles and detain drivers; the Association's use of amber oscillating and flashing lights on its vehicles was unlawful;[2] the practice of recording drivers with audio and video recording equipment was a violation of the eavesdropping statute; and the Lake Holiday security department was prohibited from using radar units to determine the speed of vehicles on Association property.

¶ 21    The appellate court held that the practice of recording drivers was not a violation of the eavesdropping statute (see 720 ILCS 5/14-2(a)(1) (West 2008)), nor was the Lake Holiday security department prohibited from using radar units. However, the appellate court held that the Association was not an entity authorized by the Illinois Vehicle Code to use amber lights on its vehicles, so that the Association's use of those lights was unlawful.

¶ 22    In addition, the appellate court held that the practice of stopping and detaining drivers for Association rule violations was unlawful. In support of that ruling, the appellate court looked to section 107-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/107-3 (West 2008)), concerning arrests by a private person. Section 107-3 provides that "[a]ny person may arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed." The appellate court found that security guards occupy the same status as private citizens. Therefore, the appellate court held that "a security guard, with the powers of an ordinary citizen, may only stop and detain a person if he 'has reasonable grounds to believe that an offense other than an ordinance violation is being committed.' " 2012 IL App (3d) 110131, ¶ 26 (quoting 725 ILCS 5/107-3 (West 2008)).

---

[2]Although the security department used amber and white oscillating lights at the time plaintiff was cited for speeding in this case, the focus of the parties' arguments in the appellate court and this court concerned the security department's subsequent use of amber oscillating lights.

¶ 23    The appellate court further noted that "[a]n 'offense' is 'a violation of any penal statute of this State.' " 2012 IL App (3d) 110131, ¶ 26 (quoting 720 ILCS 5/2-12 (West 2008), and 725 ILCS 5/102-15 (West 2008)). A penal statute of this state is a law enacted by the General Assembly that prohibits some act and prescribes a punishment. *Id.* The appellate court concluded that security officers are without legal authority to stop and detain drivers for violating Association rules, because those rules are enacted by the Association, not the General Assembly, and therefore do not constitute an "offense" for purposes of section 107-3. *Id.* ¶ 27. The appellate court stated that the security officers were attempting to assert police powers that they had neither the right nor the power to assert. *Id.* ¶ 28. The appellate court therefore remanded to the trial court for entry of summary judgment in favor of plaintiff on his claims concerning the Association's practices of stopping and detaining drivers for rule violations, and using amber lights on their security vehicles.

¶ 24    The appellate court next found that the trial court erred in entering summary judgment in favor of defendants on plaintiff's claim for false imprisonment. The appellate court held that plaintiff had established the elements necessary for his false imprisonment claim. 2012 IL App (3d) 110131, ¶ 57. The appellate court found that plaintiff had established that he was restrained by Podnar, and that Podnar acted without reasonable grounds to believe that plaintiff had committed an offense, because a violation of an Association rule or regulation is not an offense. *Id.* ¶¶ 54-57. The appellate court therefore remanded plaintiff's claim for false imprisonment to the trial court for entry of summary judgment in favor of plaintiff on the liability portion of his claim, and for a determination of plaintiff's damages.

¶ 25                                      ANALYSIS

¶ 26    On appeal, defendants argue that the appellate court erred in ruling that the Association's private security officers were without authority to stop and detain drivers for violating Association rules and regulations, and in holding that the Association's use of amber oscillating lights on its security vehicles was unlawful. Defendants also argue that the appellate court erred in entering summary judgment in favor of plaintiff and against the Association on plaintiff's false imprisonment claims. Finally, defendants ask this court to clarify that the appellate court's silence on the remaining counts of plaintiff's complaint effectively affirmed the trial court's grant of summary judgment in favor of defendants on those counts.

¶ 27    Summary judgment is proper when the pleadings, depositions, admissions and affidavits on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). This court's review of an appellate court's ruling reversing a trial court's order granting summary judgment is reviewed *de novo*. *Rush University Medical Center v. Sessions*, 2012 IL 112906, ¶ 15.

¶ 28    We first address defendants' argument concerning the authority of the Association's private security officers. As noted, the appellate court found that the Lake Holiday security officers occupied the same status as private citizens and, for that reason, lacked the authority to stop and detain drivers for violating the Association's rules. The appellate court found that

the security officers were attempting to assert police powers that they had neither the right nor the authority to assert.

¶ 29     Plaintiff adopts the appellate court's reasoning in arguing on appeal that the Association security department was improperly attempting to assert police powers. Plaintiff argues that the Association was without authority to create the Association security department or to create enforcement mechanisms for the department. The gravamen of plaintiff's argument is that, in creating its security department, the Association was unlawfully exercising police powers that it had not been granted, and was unlawfully empowering its employees with police powers that they did not have, so that any actions taken by the security department were unlawful. Plaintiff contends that only the Illinois legislature has the authority to create a private or public police department. Plaintiff repeats that the Association security officers therefore had only the authority of a private citizen to effect an arrest, and a citizen's arrest has to be for an offense greater than an ordinance violation.

¶ 30     Plaintiff and the appellate court err in viewing this issue as one involving private citizens improperly attempting to assert police powers. The appellate court overlooked the fact that the Lake Holiday security officers only stop and detain drivers for violating Association rules occurring on private Association property, and citations are only issued to Association members. The appellate court failed to consider the Association's enforcement of its rules and regulations in the context of its authority as a voluntary association to enact and enforce those rules and regulations.

¶ 31     As defendants and the *amicus* argue, with regard to voluntary associations, this court has long held that:

> "In churches, lodges, labor unions, and other like voluntary associations, each person on becoming a member, either by express stipulation or by implication, agrees to abide by all rules and regulations adopted by the organization. [Citation.] Courts will not interfere to control the enforcement of by-laws of such associations, but they will be left free to enforce their own rules and regulations by such means and with such penalties as they may see proper to adopt for their government." *Engel v. Walsh*, 258 Ill. 98, 103 (1913).

Thus, courts generally will not interfere with the internal affairs of a voluntary association absent mistake, fraud, collusion or arbitrariness. *Finn v. Beverly Country Club*, 289 Ill. App. 3d 565, 568 (1997).

¶ 32     Here, there are no allegations of mistake, fraud, collusion or arbitrariness. Rather, plaintiff generally complains that the Association was unlawfully exercising police powers and authority, and attempts to support that claim with allegations that Podnar was not a sworn police officer, was not a licensed security guard, was carrying mace, handcuffs, and a nightstick, and was driving a vehicle with allegedly unlawful white and amber lights. However, plaintiff does not, and cannot, argue that the Association and its security officer did not act consistently with its bylaws, or its rules and regulations, in stopping plaintiff for speeding on an Association street. Consequently, the trial court properly declined to interfere in the internal affairs of the Association.

¶ 33     Plaintiff also argues that the Association is exceeding the legislative powers granted to

not for profit homeowners associations in enacting and enforcing its traffic rules. As defendants point out, however, the General Not For Profit Corporation Act of 1986 broadly provides that each corporation shall "have and exercise all powers necessary or convenient to effect any or all of the purposes for which the corporation is formed." 805 ILCS 105/103.10(r) (West 2008). Here, the Association's amended articles of incorporation provided, *inter alia*, that the Association was organized to construct and maintain roadways and to do all things reasonably necessary therefore. Regulating and enforcing traffic rules is reasonably necessary to maintain the Lake Holiday roadways.

¶ 34     In addition, the Association bylaws stated that the board "shall adopt such rules and regulations relating to the use of association property as they may deem reasonably necessary for the best interests of the association and its members," and may adopt reasonable sanctions for noncompliance with those rules and regulations. To that end, the Association rules provided for a 25-mile-per-hour speed limit on Association roads, and provided that the Association security department had the power to enforce Association rules and regulations and to issue citations for violations of those rules and regulations. The Association rules and regulations were enforced only on Association property, and citations for violations of the rules and regulations were only issued to Association members. Consequently, the Association was not unlawfully exercising police powers that it did not possess, but rather was acting within its authority as a voluntary association to adopt and enforce its own rules and regulations.

¶ 35     That the Association was within its authority in establishing and enforcing speed limits on Association property is further supported by section 11-209.1 of the Illinois Vehicle Code (625 ILCS 5/11-209.1 (West 2008)), which sets forth the powers of local authorities. The statute provides, in pertinent part:

> "(a) Any person or board of directors owning, operating or representing a residential subdivision, development, apartment house or apartment project, containing a minimum of 10 apartments or single family residences may file a written request, with the appropriate local authority wherein such property is situated, requesting their law enforcement agency enforce the provisions of this Code on all private streets or roads open to or used by the tenants, owners, employees or the public for the purposes of vehicular traffic by permission of such person or board of directors and not as a matter of public right. Notwithstanding Section 1-126 and Section 1-201 of this Code, if the local authority grants such request by the adoption of an enabling ordinance then all such private streets or roads shall be considered 'highways' only for the enforcement purposes of this Code." 625 ILCS 5/11-209.1(a) (West 2010).

¶ 36     In this case, the board adopted a resolution on January 16, 2007, requesting the authorities of La Salle County to enforce and apply the Illinois Motor Vehicle Code on its private streets and roads in accordance with section 11-209.1. On February 8, 2007, the La Salle County board approved the resolution and adopted an ordinance enabling the roadways in the Lake Holiday Development to be treated as public highways for purposes of the Illinois Motor Vehicle Code, pursuant to section 11-209.1.

¶ 37     Section 11-209.1 also provides, however, in subsection (d), that:

"The filing of a written request or the adoption of the enabling ordinance under this Section in no way constitutes a dedication to public use of any street, road, driveway, trail, terrace, bridle path, parkway, parking area, or other roadway open to or used by vehicular traffic, *nor does it prevent such person or board of directors, as owners of such property, from requiring additional regulations than those specified by the local authorities or otherwise regulating such use as may seem best to such person or board of directors as long as they do not conflict with the powers granted to local authorities under Section 11-208 of this Code.*" (Emphasis added.) 625 ILCS 5/11-209.1(d) (West 2008).

¶ 38    Section 11-208(a)(10) of the Vehicle Code provides:

"The provisions of this Code shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from:

* * *

10. Altering the speed limits as authorized in Section 11-604[.]" 625 ILCS 5/11-208 (West 2008).

¶ 39    As the trial court found, then, pursuant to subsection (d) of section 11-209.1, the Association retained the right to enforce its own traffic rules and regulations and to issue citations for violations of the Association's rules and regulations. In doing so, the security officers were not attempting to unlawfully assert police powers.

¶ 40    It is worth noting that under plaintiff's analysis, had the Association never requested the La Salle County authorities to enforce and apply the Illinois Vehicle Code on its private streets and roads, the Association effectively would have no speed limit on its private roads. The Association would have no recourse if Association members refused to obey the Association speed limits and simply sped through the streets of Lake Holiday with impunity. Taken a step further, under plaintiff's scenario, there was no enforceable speed limit for the Lake Holiday streets from the time the Association was incorporated in 1965 until the request was made to the La Salle County authorities in 2007. We can discern no logic in allowing a private homeowners association to construct and maintain private roadways, but not allowing the association to implement and enforce traffic laws on those roadways. Consequently, the appellate court erred in holding that the practice of stopping and detaining drivers for violations of Association rules was unlawful, and erred in reversing the trial court's grant of summary judgment in favor of defendants on that issue.

¶ 41    Defendants next argue that the appellate court erred in holding that the Association's use of amber oscillating lights on its security vehicles was unlawful. At the outset, we note some confusion concerning this issue. Plaintiff's complaint alleged that the Association's security vehicles were equipped with amber and white oscillating lights at the time he was pulled over, and that defendants were prohibited from using such lights pursuant to section 12-215 of the Illinois Vehicle Code (625 ILCS 5/12-215 (West 2008)). As noted, defendant Clifford testified that he was directed to stop using amber and white lights and switched to amber lights subsequent to the incident at issue in this case.

¶ 42    In ruling on the motions for summary judgment, the trial court found that defendants

were permitted to use amber oscillating lights because the statutory section allowed the use of amber lights by a security company, and defendants qualified as a security company. Plaintiff pointed out to the trial court that amber and white lights were used on him, but the trial court stated that it did not see anywhere in the statute that white lights were in violation of the statute. Plaintiff did not further pursue the fact that his complaint alleged the use of amber and white lights.

¶ 43    On appeal, the appellate court framed plaintiff's issues as including a claim that the Association's security department was not authorized by law to use amber oscillating lights on security vehicles. As noted, the appellate court ruled that defendants were not permitted to use amber oscillating lights and did not address the use of amber and white oscillating lights. Plaintiff did not file a petition for rehearing requesting that the appellate court address the issue of amber and white lights. In this court, defendants have appealed the appellate court's ruling concerning amber oscillating lights. Although plaintiff references defendant's former use of amber and white oscillating lights in support of his argument that the Association's security department generally was unlawful, plaintiff has not filed a cross-appeal or asked this court to address the issue of the amber and white oscillating lights. Accordingly, our review is limited to the appellate court's ruling concerning the Association's use of amber oscillating lights.

¶ 44    With regard to the issue of amber oscillating lights, defendants note that section 12-215(b)(13) of the Illinois Vehicle Code prohibits the use of amber oscillating, rotating or flashing lights except for "[v]ehicles used by a security company, alarm responder, or control agency." 625 ILCS 5/12-215(b)(13) (West 2008). Defendants argue that they fit within the definition of security company.

¶ 45    The appellate court noted that neither the Vehicle Code nor any other Illinois statute defined "security company." The appellate court therefore stated that it must look to the plain and ordinary meaning of the phrase and, accordingly, looked to the dictionary definitions of "security" and "company." 2012 IL App (3d) 110131, ¶¶ 33, 34. The appellate court noted that Webster's Third New International Dictionary defined "security" as " 'the quality or state of being secure: as *** freedom from danger.' " *Id.* ¶ 34. "Company" was defined as " 'an association of persons for carrying on a commercial or industrial enterprise or business.' " *Id.* Based upon those definitions, the appellate court concluded that a "security company" is " 'an association of persons engaged in the business of keeping people secure and free from danger.' " *Id.* ¶ 34. Because the Association was not a commercial enterprise in the business of " 'keeping people secure and free from danger,' " it was not a "security company" and was not authorized by the Vehicle Code to use amber lights on its vehicles. *Id.* ¶¶ 35, 36.

¶ 46    Defendants argue that the appellate court erred in failing to look to the legislative intent supporting section 12-215(b)(13) to discern the meaning of security company. We agree.

¶ 47    This court's primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *People ex rel. Illinois Department of Corrections v. Hawkins*, 2011 IL 110792, ¶ 23. The most reliable indicator of the legislature's intent is the plain language of the statute. *Id.* When the statutory language is clear and unambiguous, it should be applied

as written without resort to extrinsic aids or tools of interpretation. *Id.* If the language of a statute is ambiguous, this court turns to extrinsic aids of statutory construction, including legislative history and well-established rules of construction. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 15.

¶ 48    Because the term "security company" was not defined in the statute, the appellate court looked to the dictionary definitions of the words "security" and "company." It is appropriate to use a dictionary to ascertain the meaning of an otherwise undefined word or phrase. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 8 (2009). The appellate court looked at Webster's Third New International Dictionary's definition of "company" as " 'an association of persons for carrying on a commercial or industrial enterprise or business,' " to find that Lake Holiday's security department was not a "security company" for purposes of section 12-215(b)(13). 2012 IL App (3d) 110131, ¶ 34.

¶ 49    However, Black's Law Dictionary defines company both as:

> "1. A corporation—or, less commonly, an association, partnership, or union—that carries on a commercial or industrial enterprise. 2. A corporation, partnership, association, joint-stock company, trust, fund, or organized group of persons, whether incorporated or not, and (in an official capacity) any receiver, trustee in bankruptcy, or similar official, or liquidating agent, for any of the foregoing." Black's Law Dictionary 318 (9th ed. 2009).

¶ 50    Under the second definition of "company" set forth in Black's Law Dictionary, the Association's security department would be considered a company. The differing definitions of "company" lead to the conclusion that the term "security company" in section 12-215(b)(13) is ambiguous. " 'The existence of alternative dictionary definitions of [a word], each making some sense under the statute, itself indicates that the statute is open to interpretation.' " *Landis*, 235 Ill. 2d at 11 (quoting *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 418 (1992)).

¶ 51    Therefore, we turn to extrinsic aids of statutory construction to ascertain the legislative intent, and begin with the legislative history and debates. See *Nowak*, 2011 IL 111838, ¶ 13. Public Act 92-820 amended section 12-215 of the Vehicle Code to add a section allowing propane delivery trucks to use amber oscillating lights. In addition, subsection (b)(13) was amended to delete "if the security company, alarm responder, or control agency is bound by a contract with a federal, State, or local government entity to use the lights," which had been a limitation on "Vehicles used by a security company, alarm responder, or control agency." These amendments were introduced in Senate Bill 1880, which was sponsored by Senator Todd Sieben. Following the third reading of the bill, Senator Sieben explained:

> "This legislation, as amended, would allow private security vehicles to use amber oscillating, rotating or flashing lights, as well as propane delivery trucks." 92d Ill. Gen. Assem., Senate Proceedings, April 4, 2002, at 55 (statements of Senator Sieben).

¶ 52    Following Senator Sieben's remarks, the bill passed by a vote of 56 to 0. Thereafter, following the third reading of the bill in the House of Representatives, the bill's House sponsor, Representative Thomas Holbrook, stated:

"Senate Bill 1880 is a Vehicle Code Bill which allows for flashing lights on propane trucks. *** And lastly, it allows also flashing lights on security vehicles on their own property on private land." 92d Ill. Gen. Assem., House Proceedings, May 22, 2002, at 38-39 (statements of Representative Holbrook).

¶ 53     Following Representative Holbrook's remarks, the bill passed by a vote of 115 to 0.

¶ 54     The preceding remarks support defendants' argument that section 12-215(b)(13) was not intended to be limited to vehicles used by a commercial enterprise in the business of keeping people secure and free from danger, but rather would include private security vehicles such as those used by the Association. The fact that the legislature intended to allow a broader use of amber oscillating lights also is evident by the fact that Public Act 92-820 removed the limitation that a security company, alarm responder, or control agency be bound by a contract with a federal, state or local government entity to use the amber lights. The Association's private security vehicles, which are used only on private Association land, fit within the framework intended by the amendments to section 12-215(b)(13).

¶ 55     Plaintiff argues, however, that the appellate court was correct that the Association's security department was not a security company for purposes of section 12-215(b)(13) because the security department was not licensed under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 (Private Detective Act) (225 ILCS 447/10-5 (West 2008)). Plaintiff points out that section 10-5(a) of the Private Detective Act provides:

"It is unlawful for a person to act as or provide the functions of a private detective, private security contractor, private alarm contractor, fingerprint vendor, or locksmith or to advertise or to assume to act as any one of these, or to use these or any other title implying that the person is engaged in any of these activities unless licensed as such by the Department." 225 ILCS 447/10-5(a) (West 2008).

¶ 56     Further, section 10-5(b) provides:

"It is unlawful for a person, firm, corporation, or other legal entity to act as an agency licensed under this Act, to advertise, or to assume to act as a licensed agency or to use a title implying that the person, firm, or other entity is engaged in the practice as a private detective agency, private security contractor agency, private alarm contractor agency, fingerprint vendor agency, or locksmith agency unless licensed by the Department." 225 ILCS 447/10-5(b) (West 2008).

Based upon the preceding sections of the Private Detective Act, plaintiff argues that, absent a license, the Association's security department was not a private security company and was not entitled to use amber oscillating lights.

¶ 57     We do not find plaintiff's argument persuasive. We first note that the Private Detective Act uses the term "private security contractor," while section 12-215(b)(13) of the Vehicle Code uses the term "private security company." Even if we were to assume that the term "private security contractor" is interchangeable with the term "private security company," the Private Detective Act expressly excludes entities such as the Association from the licensure requirement in section 25-5. That section states, "The provisions of this Act related to licensure of a private security contractor do not apply to any of the following *** (3) A

-13-

person, watchman, or proprietary security officer employed exclusively by only one employer in connection with the exclusive activities of that employer." 225 ILCS 447/25-5(3) (West 2008). Here, the Association security department officers are employed exclusively by only one employer, the Association, in connection with the exclusive activities of the Association. Therefore, even if the Association's private security department is a private security contractor, the license requirements for private security contractors do not apply to the Association's security department.

¶ 58    Accordingly, the Private Detective Act does not support plaintiff's claim that the Association's security department was not a security company for purposes of section 12-215(b)(13) of the Illinois Vehicle Code. The appellate court erred in holding that the Association unlawfully used amber oscillating lights on its security vehicles, and erred in reversing the trial court's grant of summary judgment in favor of defendants on that issue.

¶ 59    We next consider whether the appellate court erred in ruling in favor of plaintiff on his claim of false imprisonment. Defendants first argue that plaintiff waived the issue of false imprisonment because the issue was never argued or briefed in the trial court. This is incorrect. As plaintiff argues, he did move for summary judgment in his favor on his false imprisonment claim in the trial court, contending that the issue could be decided as an issue of law because the parties did not disagree on the underlying facts. Accordingly, plaintiff did not waive that issue on review.

¶ 60    In the alternative, defendants argue that plaintiff's claim of false imprisonment fails because he cannot establish that he was restrained, and he cannot establish that the Association's procedure for rule enforcement was unreasonable.

¶ 61    False imprisonment is the unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 474 (1990). The elements of a cause of action for false imprisonment are that the plaintiff was restrained or arrested by the defendant, and the defendant acted without reasonable grounds to believe that an offense was committed by the plaintiff. *Id.*

¶ 62    Upon review, we find the second element to be dispositive, so we need not address defendants' claim that plaintiff cannot establish that he was restrained by Podnar. Based upon the facts of this case, plaintiff cannot establish that Podnar acted without reasonable grounds or probable cause to believe that an offense was committed by plaintiff.

¶ 63    Probable cause is an absolute bar to a claim of false imprisonment. *Martel Enterprises v. City of Chicago*, 223 Ill. App. 3d 1028, 1034 (1991). Further, the existence of probable cause is a question of law and only becomes a question of fact if the operative facts are in dispute. *Lappin v. Costello*, 232 Ill. App. 3d 1033, 1041-42 (1992). Probable cause is defined as a state of facts which, if known, would lead a person of ordinary caution and prudence to believe or entertain a strong and honest suspicion that the person arrested is guilty. *Lappin*, 232 Ill. App. 3d at 1042.

¶ 64    Here, the operative facts are not in dispute, so the existence of probable cause is a question of law. Although plaintiff denies that he was speeding, the parties agree that Podnar pulled plaintiff over because Podnar's radar measured plaintiff's speed at 34 miles per hour in a 25-mile-per-hour zone. The appellate court based its lack of a probable cause finding on

the fact that plaintiff was pulled over for violating an Association rule, which it held was not an "offense" because an Association rule is not a felony or misdemeanor. As we have held, however, the appellate court erred in analyzing Podnar's stop of plaintiff in terms of a private citizen effecting a citizen's arrest, rather than analyzing the stop as pursuant to Association rules and regulations.

¶ 65    Here, the Association's rules and regulations set a 25-mile-per-hour speed limit unless otherwise posted, and gave Association security officers the power to enforce those rules and regulations. Podnar measured plaintiff's speed on a 25-mile-per-hour Association road at 34 miles per hour, a violation of the Association rules. These facts would lead a person of ordinary caution and prudence to believe or entertain a strong and honest suspicion that plaintiff was guilty of violating Association rules. Consequently, Podnar had probable cause to believe that an offense was committed by plaintiff, which is an absolute bar to plaintiff's claim for false imprisonment. The trial court therefore properly granted summary judgment in favor of defendants on plaintiff's claim for false imprisonment. The appellate court erred in reversing the trial court on that issue.

¶ 66    Finally, we address defendants' claim that the appellate court's silence concerning the trial court's grant of summary judgment in favor of defendants on counts II, III, and V through XIV of plaintiff's third amended complaint effectively affirmed the trial court's ruling. We agree with defendants that the appellate court affirmed summary judgment on those counts.

¶ 67    In the trial court, plaintiff indicated he wanted the trial court to enter summary judgment on all counts of his complaint so that he could appeal the entire case. On appeal, however, plaintiff did not specifically challenge all the counts of his complaint. Plaintiff specifically appealed only the trial court's entry of summary judgment in favor of defendants on his declaratory judgment counts. The appellate court's specific ruling with regard to those counts was as follows:

> "As set forth above, the Association's security department's practices of stopping and detaining drivers for violating Association rules and using amber flashing and oscillating lights on its security vehicles are unlawful. Thus, the trial court erred in granting summary judgment to the Association on those issues. We affirm the court's grant of summary judgment to the Association on plaintiff's claims that the Association's use of recording equipment and radar violate Illinois law. However, we reverse and remand for the trial court to grant summary judgment to plaintiff on his claims that the Association's practices of stopping and detaining drivers for rule violations and of using amber lights on their security vehicles are unlawful." 2012 IL App (3d) 110131, ¶ 49.

¶ 68    The appellate court then elected to address the false imprisonment count, and with regard to that count stated, "[w]e reverse and remand to the trial court to enter summary judgment in favor of plaintiff on the liability portion of his false imprisonment cause of action and to determine plaintiff's damages." *Id.* ¶ 57. The appellate court then generally held that "[t]he order of the circuit court of La Salle County is affirmed in part and reversed in part, and the cause is remanded." *Id.* ¶ 59.

¶ 69 Defendants are correct that the appellate court's silence on the remaining issues indicated that those issues were affirmed. Plaintiff did not specifically appeal the trial court's ruling concerning those counts, nor did plaintiff seek rehearing in the appellate court to ask that court to address the remaining counts. Plaintiff did not file a cross-appeal in this court challenging summary judgment in favor of defendants on those counts. Consequently, we find that summary judgment in favor of defendants on those counts was affirmed by the appellate court.

¶ 70                                    CONCLUSION

¶ 71 For all of the foregoing reasons, we reverse the appellate court's decision granting summary judgment in favor of plaintiff on his declaratory judgment claims concerning the Association's practices of stopping and detaining drivers for rule violations and of using amber lights on their security vehicles. We also reverse the appellate court's decision granting summary judgment in favor of plaintiff on his claim for false imprisonment. We affirm the appellate court's decision affirming summary judgment in favor of defendants on the remaining counts of plaintiff's complaint.

¶ 72 Appellate court judgment reversed in part and affirmed in part.

¶ 73 Circuit court judgment affirmed.