# Illinois Official Reports

## Appellate Court

<div style="border">

### *People v. Holm*, 2014 IL App (3d) 130582

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ADAM A. HOLM, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0582 |
| Filed | December 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for the wilful obstruction or interference with the lawful taking of wild animals under section 2(a) of the Hunter and Fishermen Interference Prohibition Act was reversed, since defendant's conduct of making noises and riding an all-terrain vehicle on land where he lived with his sons and his mother, the owner, fell within the statutory exemption applicable to "landowners, tenants, or lease holders exercising their legal rights to the enjoyment of land, including, but not limited to, farming and restricting trespass," regardless of the fact that the conduct, as in defendant's case, was intended to interfere with lawful hunting on neighboring property, especially when defendant remained on his mother's property and did not perform any illegal acts; furthermore, the legislative debates showed that the Act was intended to apply to protesters trespassing at game preserves, clubs or public hunting grounds, not people legally using their own property. |
| Decision Under Review | Appeal from the Circuit Court of Grundy County, No. 12-CM-958; the Hon. Robert C. Marsaglia, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal

Christopher S. Carroll, of Aurora, for appellant.

Jason Helland, State's Attorney, of Morris (Laura E. DeMichael, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice Lytton and Justice Holdridge concurred in the judgment and opinion.

## OPINION

¶ 1 Defendant, Adam A. Holm, was charged with wilful obstruction or interference with the lawful taking of wild animals under section 2(a) of the Hunter and Fishermen Interference Prohibition Act (Act) (720 ILCS 125/2(a) (West 2010)). The charge followed an incident that occurred on Adam's mother's property, where Adam resided. Adam defended *pro se* at a jury trial and was found guilty. The court imposed a sentence of probation and a suspended term of incarceration. Adam appeals, arguing that the evidence was insufficient to prove that he violated the statute and therefore committed a crime. We reverse.

¶ 2                                        FACTS

¶ 3 At trial, witness testimony established the following undisputed facts. Alexander Kerr's in-laws, the Mottls, lived on an approximately 130-acre parcel of land at 3050 Winterbottom Road in rural Morris, Illinois. The property to the south of the Mottls', at 3000 Winterbottom Road, was owned by Adam's mother, Loretta Holm. She, Adam, and her grandsons, Daniel and Nick, all resided on her property. Winterbottom Road ran north-south, and the property line shared by the two properties ran east-west, perpendicular to the road. Each property extended on both sides of Winterbottom Road. Both properties were wooded on the east side of the road and comprised of cornfields on the west side. Each property had a dwelling located approximately 300 yards east of the road. On each property, a driveway ran east from Winterbottom Road to the respective dwelling. Both driveways were close to the shared property line.

¶ 4 Kerr had hunted on the Mottls' property for the previous 10 years. He had erected five tree stands and two ground blinds in the wooded area of the property. The wooded area also had multiple "fire lanes"–long, narrow stretches of land where the trees had been removed to help contain potential forest fires. The lanes ran north from the Mottls' driveway and allowed Kerr easy access on foot from the driveway to the tree stands and ground blinds.

¶ 5 On the afternoon of December 2, 2012, Kerr was hunting on the Mottls' land with conservation officer Dave Wollgast. Wollgast was present in response to neighbors' reports

that Adam had been disrupting hunts in the area. Kerr and Wollgast wore blaze orange hats and vests and carried shotguns.

¶ 6   Kerr and Wollgast walked westbound on the Mottl driveway from the Mottl home toward the fire lanes. They saw Adam watching them from the Holm property. As the hunters reached the fire lanes, Adam's son Daniel approached the property line from the south and began whistling and kicking a can along the ground. At some point, he put a rock in the can and shook it. When Kerr would stop walking, Daniel would correspondingly stop whistling and kicking the can. Adam positioned an all-terrain vehicle (ATV) on the Holm property opposite the fire lane that Kerr had begun walking down and revved the ATV's engine.

¶ 7   The Holms got as close as possible to Kerr and Wollgast while remaining at all times on their own property. As Kerr moved to find a different area to hunt, Daniel followed him along the property line, clapping his hands. Each time Kerr and Wollgast moved to a different location, Adam and Daniel followed them, never leaving their own property. Daniel clapped his hands, yelled, and pretended to sneeze and cough. At one point, Adam said, "There they go. There goes two more into the field." Daniel responded, "One was a buck. It was at least an eight pointer." Once when Kerr raised his gun and pretended to take aim at a deer, Daniel responded by yelling, "Run, Forrest, run."

¶ 8   Adam started the ATV's engine and accelerated so that the tires threw gravel. He and Daniel followed Kerr and Wollgast for approximately 1 hour and 45 minutes until Kerr and Wollgast put down their guns and approached the Holms. Kerr asked why the Holms were acting as they were, and Adam admitted that he knew Kerr and Wollgast were hunting. Wollgast arrested Adam and Daniel for hunter harassment.

¶ 9   Daniel testified that he lived at 3000 Winterbottom Road with his grandmother, his brother, and his father Adam. Earlier in 2012, he caught Kerr's relatives trespassing on his grandmother's land. On December 2, 2012, he and Adam were taking a ride on their ATV when they noticed Kerr and Wollgast. They laughed when they saw deer running from the hunters. According to Daniel, the deer were scared off by Kerr and Wollgast moving around, not by the noise the Holms were making. He admitted to clapping and whistling, but claimed he did so only because he was bored.

¶ 10   The jury was instructed that "[i]t is an affirmative defense to a charge of Willful Obstruction or Interference with Lawful Taking of Wild Animals when landowners, tenants, or lease holders exercise their legal rights to the enjoyment of land including, but no [*sic*] limited to, restricting trespass." The jury also received an instruction on accountability. Adam was found guilty and sentenced to 2 years' probation and a $175 fine, along with 90 days in jail that could be vacated upon compliance with the terms of probation. The court also ordered Adam to have no contact with Kerr or Kerr's family. Defendant filed a posttrial motion claiming, among other things, that the evidence was insufficient to support the jury's verdict. The court denied the motion and Adam appealed.

¶ 11                                   ANALYSIS

¶ 12   Section 2(a) of the Act establishes a Class B misdemeanor when a person "[w]ilfully obstructs or interferes with the lawful taking of wildlife or aquatic life by another person with the specific intent to prevent that lawful taking." 720 ILCS 125/2(a) (West 2010). However, section 2(a)'s prohibition "does not apply to landowners, tenants, or lease holders exercising

their legal rights to the enjoyment of land, including, *but not limited to*, farming and restricting trespass." (Emphasis added.) 720 ILCS 125/2 (West 2010).

¶ 13     On appeal, Adam claims the evidence was insufficient to prove him guilty beyond a reasonable doubt because his conduct meets the statutory exemption described above. He argues that on December 2, 2012, he was a tenant on his mother's land, exercising his legal rights to the enjoyment of that land; accordingly, section 2(a) of the Act did not apply to his conduct.

¶ 14     We have found no other case in which a defendant charged under this statute actually resides on the property where the alleged offense occurred. This case is therefore one of first impression.

¶ 15     This issue raised by Adam requires us to engage in statutory construction of the Act (720 ILCS 125/2 (West 2010)). Our review is *de novo*. *People v. Gutman*, 2011 IL 110338, ¶ 12. The primary objective of statutory construction is to ascertain and give effect to the legislature's intent. *Id*. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *People v. Garcia*, 241 Ill. 2d 416, 421 (2011). When the statutory language is clear and unambiguous, it should be applied without interpretive aids. *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 47. If the statute is ambiguous, courts turn to extrinsic aids of statutory construction, including rules of construction and statutory history. *Id*. Where a statutory term is not otherwise defined, it is appropriate to use a dictionary to ascertain its meaning. *Poris*, 2013 IL 113907, ¶ 48.

¶ 16     The statute at issue here contains an exemption for "tenants *** exercising their legal rights to the enjoyment of land, including, but not limited to, farming and restricting trespass." 720 ILCS 125/2 (West 2010). We undertake two inquiries to determine whether the exemption applies to defendant: (1) whether defendant was a tenant at 3000 Winterbottom Road on December 2, 2012, and, if so, (2) whether defendant was "exercising [his] legal rights to the enjoyment of" that land.

¶ 17     As to the first inquiry, the testimony established that the property at 3000 Winterbottom Road was owned by defendant's mother and that Adam and his sons were residing there on December 2, 2012. The State does not dispute that Adam was a "tenant" on the Holm property on the date this incident occurred. Black's Law Dictionary defines "tenant" as follows: "One who holds or possesses lands or tenements by any kind of right or title." Black's Law Dictionary 1478 (7th ed. 1999). We find that defendant was an authorized resident on the property with legal rights to enjoy the land.

¶ 18     Turning to the second inquiry, the statute exempts from its sweep tenants "exercising their legal rights to the enjoyment of land, including, but not limited to, farming and restricting trespass." 720 ILCS 125/2 (West 2010). Black's Law Dictionary defines "enjoyment" as "1. Possession and use, esp. of rights or property. 2. The exercise of a right." Black's Law Dictionary 550 (7th ed. 1999). The statutory language is unambiguous–the statute does not apply to landowners and tenants engaged in legal uses of their land.

¶ 19     In the present case, the actions taken by Adam–and the actions taken by Daniel, for which Adam may have been accountable–were legal uses of their land. The conservation officer, Dave Wollgast, testified for the State that Adam and Daniel never left their own property and did not perform any illegal acts. Moreover, it is generally a legal use of land to ride an ATV and make noise. There is no contention that Adam or Daniel violated any noise ordinance or

other criminal statute. The plain language of the statute exempts Adam's and Daniel's actions from criminal liability.

¶ 20 The State argues that Adam's use of his land was not legal where his conduct was performed with the specific intent to prevent Kerr's lawful taking. We disagree. Whether defendant acted with the specific intent to prevent a taking is irrelevant. The statutory exemption applies even where a defendant had such intent. To hold otherwise would make the exemption meaningless. A defendant who lacks the intent to interfere does not meet the elements of the statute in the first place; there would be no need for an exemption. The exemption is meaningful only if it applies to exempt defendants who acted with the intent to prevent but did so through the legal use of their own property. The exemption therefore applies to defendant, despite sufficient evidence that he acted with intent to interfere with or prevent Kerr's lawful taking.

¶ 21 Although not necessary to our decision because the statutory language is clear and unambiguous, we note that during legislative debate on the bill that became the original version of the Act (Pub. Act 83-153 (eff. Jan. 1, 1984)), its sponsor stated that the bill was intended to address "the problem [that] arose out of some areas in the state, whereby people were picketing game preserves and that type of thing and did not want to leave when they were told to by the law enforcement officer. This Bill simply provides penalties in case that they do not leave and knowingly do so." 83d Ill. Gen. Assem., House Proceedings, May 23, 1983, at 170 (statements of Representative Hicks). The Act was intended to apply to people protesting at game preserves, clubs or public hunting grounds–trespassing–not to people legally using their own property.

¶ 22 Based on our construction of the statute, a rational trier of fact could not have found Adam guilty beyond a reasonable doubt.

¶ 23                                            CONCLUSION
¶ 24 The judgment of the circuit court of Grundy County is reversed.

¶ 25 Reversed.