2015 IL App (1st) 150460

SIXTH DIVISION
September 25, 2015

No. 1-15-0460

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ESKHIRIA GILYANA and MALKO ODISHOO, | ) | Appeal from the |
| | ) | Circuit Court |
| Plaintiffs-Appellants, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 14 CH 14916 |
| | ) | |
| ASSYRIAN AMERICAN ASSOCIATION OF CHICAGO, | ) | Honorable |
| | ) | Rita M. Novak, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs Eskhiria Gilyana and Malko Odishoo filed a five-count amended complaint seeking various forms of relief against defendant Assyrian American Association of Chicago (AAAC). In essence, the sprawling 176-paragraph amended complaint alleged that the AAAC improperly denied Gilyana and Odishoo membership or particular positions in the AAAC. The AAAC moved to dismiss the amended complaint pursuant to both sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2014)). The motion basically argued that Illinois law does not recognize a legal claim regarding membership in a private organization. The trial court granted the motion and dismissed the amended complaint with prejudice. The written order specifies that the dismissal was pursuant to section 2-615.

Plaintiffs opted to rest on their amended complaint and appeal rather than file a second amended complaint.

¶ 2     Count 1 of the amended complaint sought injunctive relief to reinstate Gilyana as an AAAC member.  Count 2 sought injunctive relief to reinstate Odishoo as a committee chairman and *ex officio* member of the Executive Committee.  Count 3 sought injunctive relief to delay elections of AAAC officers until certain unnamed individuals were permitted to join the AAAC as new members, who would presumably side with Odishoo and Gilyana with respect to internal AAAC disputes.  Count 4, labeled "Breach of Contract," alleges that by paying dues, both plaintiffs entered into contracts with AAAC which AAAC breached when it removed plaintiffs from their respective positions.  Count 5 alleges that the AAAC violated plaintiffs' rights to "due process."  Copies of the AAAC constitution and bylaws are attached to the complaint as exhibits.

¶ 3     On appeal, plaintiffs argue that the trial court erred in dismissing the amended complaint pursuant to section 2-615 of the Code.  "A section 2-615 motion to dismiss [citation] challenges the legal sufficiency of a complaint based on defects apparent on its face."  *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).  "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts," and we "construe the allegations in the complaint in the light most favorable to the plaintiff."  *Id*. Illinois is a fact-pleading jurisdiction, and a plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action.  *Id.* at 429-30.  However, "a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery."  *Id*. at 429.  We review an order granting or denying a section 2-615 motion *de novo*.  *Id.*  This court can also consider the exhibits attached

to the complaint when reviewing the propriety of a section 2-615 dismissal. *Cowper v. Nyberg*, 2015 IL 117811, ¶ 12.

¶ 4    The amended complaint sets forth a sordid history of long-standing and ongoing disputes between the parties over plaintiffs' influence and involvement in the AAAC. Much of the complaint consists of legal arguments and citations, laudatory references to plaintiffs, and negative characterizations of defendant's officers rather than allegations of relevant material facts. Ignoring these extraneous and unnecessary allegations, we can extract the salient facts relevant to our review.

¶ 5    Gilyana claims that he was an AAAC member since 2006, but expelled from AAAC membership in 2014. The expulsion letter states that the AAAC was invoking a bylaw which prohibits convicted felons from AAAC membership.[1] Gilyana concedes his conviction, but asserts that enforcing the rule was improper because the AAAC knew he was a convicted felon when he was first admitted to membership but belatedly enforced it later. In essence, he claims that the rule was merely a pretext for the real reason behind his expulsion, which was his challenge to the procedures used to select a new AAAC vice president, a challenge which was unpopular with AAAC leadership. He alleges that he was entitled to a hearing under the AAAC bylaws and constitution before being expelled.

¶ 6    Odishoo's complaint is slightly different. He alleges he was a member of the AAAC since 2011, and served as the Membership Chairman, which entitled him to an *ex officio* seat on

---

[1]Gilyana was convicted of solicitation of murder for hire in 1994 and sentenced to 20 years' imprisonment. See generally *People v. Gilyana*, No. 1-95-0569 (1996) (unpublished order under Supreme Court Rule 23); *United States ex rel. Gilyana v. Sternes*, 180 F. Supp. 2d 978 (N.D. Ill. 2001) (denying Gilyana's *habeas corpus* petition).

the Executive Committee.[2] He states that he engaged in an ongoing effort to recruit new members and encourage former members to return. He also pointed out that various members of the Executive Committee were potentially disqualified from further service because they had missed three or more consecutive meetings, and suggested that the AAAC leadership was insufficiently aggressive in collecting back dues from delinquent members. He also alleges that the AAAC's new vice president, Edward Nadersha, was appointed by fiat rather than by special election as required by the AAAC bylaws and constitution. Odishoo alleges that he was expelled from his positions in retaliation for these complaints without a hearing as required by the bylaws.

¶ 7    Our supreme court has cautioned against courts becoming embroiled in disputes over membership in private organizations. Over a hundred years ago, the court held:

> "The courts have frequently been called upon to restrain voluntary associations, such as churches, lodges of various kinds, boards of trade, and the like, from expelling members for an alleged violation of some rule or regulation of the association, and in such cases this court has uniformly refused to sanction the practice of calling on a court of equity to adjust disputes arising between such associations and its members ***. *Courts will not interfere to control the enforcement of by-laws of such associations*, but they will be left free to enforce their own rules and regulations by such means and with such penalties as they may see proper to adopt for

---

[2]The AAAC Executive Committee consists of 22 members: 6 elected officers, 3 elected directors, 3 directors appointed by the president, and 10 committee chairs serving *ex officio*. The president appoints all the committee chairs. Accordingly, the president and his appointees control the board by a 13-9 margin.

their government." (Emphasis added.) *Engel v. Walsh*, 258 Ill. 98, 103 (1913).

¶ 8 In recent years, our supreme court has cited *Engel* favorably and reaffirmed the vitality of its central holding. See, *e.g.*, *American Federation of Technical Engineers, Local 144 v. La Jeunesse*, 63 Ill. 2d 263, 268 (1976); *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 31.

¶ 9 That court has similarly rejected claims that private organizations must follow their own internal rules with exacting punctiliousness, or with protections similar to those which the constitution grants to criminal defendants. The court has stated that "strict adherence to judicial standards of due process would be arduous and might seriously impair the disciplinary proceedings of voluntary associations." *Van Daele v. Vinci*, 51 Ill. 2d 389, 394 (1972). Our supreme court's rejection of a due process analysis in this context is undoubtedly grounded in the fact that due process is a legal doctrine which primarily applies to the action of governmental, not private, bodies. This court has stated that " 'courts will not undertake to inquire into the regularity of the procedure adopted and pursued by such tribunals in reaching their conclusions.' " *Robinson v. Illinois High School Ass'n*, 45 Ill. App. 2d 277, 284 (1963) (quoting 4 Am. Jur. *Associations & Clubs* § 17, at 466 (1936)).

¶ 10 The *Engel* court further noted that in "voluntary associations, each person, on becoming a member, either by express stipulation or by implication, agrees to abide by all rules and regulations adopted by the organization." *Engel*, 258 Ill. at 103. These would include the organization's right to resolve membership disputes internally and without judicial review. *Id.* This court has explained that doctrine, stating:

5

"Courts are not to be regarded as a sanctuary from all the problems and vicissitudes of modern life. They are ill-equipped, intellectually and otherwise, to override and second-guess the decisions of administrators who live and work with their particular areas on a daily basis. Courts must approach hardships of the type seen in the instant case with great caution and with a decent respect for the integrity of the organization with which they are dealing."

*Proulx v. Illinois High School Ass'n*, 125 Ill. App. 3d 781, 787-88 (1984).

¶ 11 Notwithstanding these holdings, the bright-line rule of *Engel* has evolved over time and become a bit less strict. Some cases have established narrow exceptions under which a court can consider membership disputes if: (1) the expelled member might suffer a financial loss or "economic necessity" is at stake (internal quotation marks omitted) (*Van Daele*, 51 Ill. 2d at 394); (2) the organization violated its own internal rules (*Finn v. Beverly Country Club*, 289 Ill. App. 3d 565, 568 (1997)); or (3) in cases of "mistake, fraud, collusion or arbitrariness" (*id.*).

¶ 12 The plaintiffs rely strongly on the second and third exceptions. However, we are required to follow precedents established by our supreme court and are not required to follow those of any lower courts. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440, 892 N.E.2d 994, 1006 (2008). We note that our supreme court has not itself adopted *any* exceptions to the bright-line rule of *Engel*, but for the "financial loss or economic necessity" exception in *Van Daele*. In fact, as recently as 2013, our supreme court reaffirmed *Engel*, even long after cases such as *Finn* suggested that an aggrieved member might have a judicial remedy for a violation of internal association rules or in cases of "mistake, fraud, collusion or arbitrariness."

*Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 31 (cursorily noting *Finn* in *dicta*). Broad, open-ended exceptions such as those in *Finn* are almost impossible to reconcile with *Engel* because they are exceptions that can easily swallow up the rule. In light of our supreme court's reluctance to adopt these "exceptions" and apply them to grant relief to a party in any reported case, we will construe them narrowly and not treat them as binding upon us.

¶ 13    There is no allegation that the plaintiffs have lost money due to their exclusion from AAAC. We thus turn to the second exception. The gist of plaintiffs' complaint is that the AAAC violated its own constitution and bylaws by removing plaintiffs from their respective positions. Accordingly, we will not summarily affirm merely because of the *Engel* abstention rule. Instead, we will examine both plaintiffs' claims not only in light of *Engel* and its progeny, but also in light of the applicable AAAC rules. However, even this review does not rescue the plaintiffs.

¶ 14    We first note that the constitution contains a preamble stating that it is only a "basic guide for the activities and business before the organization." Similarly, the bylaws state that they are merely a "structural diagram and guide for internal operations." Gilyana suggests that the AAAC breached a contract with him by violating the constitution and bylaws. He relies on authorities such as *Local 165, International Brotherhood of Electric Workers, AFL-CIO v. Bradley*, 149 Ill. App. 3d 193, 202 (1986), in which the court stated that the "bylaws and constitutions of unincorporated associations and unions" were contracts. The *Local 165* court limited its contract characterization, however, noting that these documents "have been historically regarded as unique." *Id.* Additionally, the actual words of the AAAC documents undermine any possible contract claim. The "guide" language suggests that the AAAC rules are more flexible than a standard binding contract. As the AAAC points out, article 1, section E(5)

of the AAAC bylaws states that an expelled member such as Gilyana can appeal his expulsion to the Executive Committee, which must then set the expulsion before a "General Body meeting." The General Body can reinstate the expelled member by a two-thirds vote of the members present. The amended complaint does not allege that Gilyana ever requested or availed himself of this necessary step of the appeal process. The expulsion letter, which is also an exhibit to the complaint, clearly states: "The Executive Committee will reconsider this decision if you feel that it was made in error." Therefore, even taking the allegations in the amended complaint as true, including his allegations that he did not receive "any" hearing, Gilyana does not demonstrate that he exhausted his internal remedies. That being the case, he cannot seek judicial relief under the "violation of internal rules" exception.

¶ 15 Even so, it is difficult to see how he would have been successful in reinstating his membership, because of his disqualifying felony conviction. We acknowledge his argument that the AAAC is estopped from belatedly enforcing the disqualification rule, but when and how strictly to enforce that rule is a matter properly within the discretion of the AAAC and immune from judicial review. See *Robinson v. Illinois High School Ass'n*, 45 Ill. App. 2d 277, 284 (1963) (noting that it has been held that courts will not "inquire into the regularity of the procedure adopted and pursued by such tribunals in reaching their conclusions" (internal quotation marks omitted)).

¶ 16 The third exception does not provide Gilyana with an avenue of relief. Looking at the first of the four elements of this exception, it is clear that his expulsion was not a "mistake". After all, he concedes he is a convicted felon. Similarly, he alleges no false statement by the AAAC or one of its officers, which is a necessary element for a fraud claim under Illinois law. *Doe v. Dilling*, 228 Ill. 2d 324, 342 (2008); . Collusion is a legal term describing a defense

created when two or more persons to conspire to defraud a court or a third party (usually an insurance company), and nothing of the sort is alleged here. See, e.g., *Dubina v. Mesirow Realty Development, Inc.*, 197 Ill. 2d 185, 196-203 (2001). And he does not claim that the AAAC acted arbitrarily by allowing some other convicted felon to remain as a member, but not him.

¶ 17    Odishoo's claim similarly fails. Article II, section E(C) of the bylaws provides that the AAAC president may "suspend any appointed chairman for cause based on the actual facts of the cause and appoint a more active member to perform the duties of the suspended chairman." Essentially, the chairmen serve at the pleasure of the president. The bylaws do not define "cause," so whether cause exists is a matter properly reposed in the discretion of the president and likewise protected from judicial review. See *Robinson*, 45 Ill. App. 2d at 284.

¶ 18    Accordingly, the trial court properly dismissed the case pursuant to section 2-615 of the Code for failure to state a valid claim under Illinois law.

¶ 19    Affirmed.